UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAYCAL MANZ,

                    Plaintiff,

          v.

LTN1 TIMES SQUARE, LLC d/b/a LOS TACOS 1
i/s/h/a RESTAURANT LOS TACOS NO. 1,

                    Defendant.

24 Civ. 7457 (DEH)

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Faycal Manz, proceeding *pro se*, alleges he suffered severe physical and emotional injuries, including burns and GI distress, as a result of unknowingly consuming excessively spicy salsa at Los Tacos No. 1's Times Square location. *See* Compl., ECF No. 1. Before the Court are competing Motions for Summary Judgment. ECF Nos. 71, 74. Upon review of the undisputed facts, the Court concludes that Mr. Manz's claims fail as a matter of law. Accordingly, the Court **GRANTS** summary judgment to Defendant Los Tacos 1 ("Los Tacos") and **DENIES** Mr. Manz's cross-motion.

## BACKGROUND

The following facts are undisputed by the Parties unless stated otherwise. Plaintiff Faycal Manz is a German citizen who travelled to the United States for a vacation in August 2024. Los Tacos LR 56.1 Statement ¶ 1 ("Los Tacos Stmnt."), ECF 72-11.[1] On his trip, he visited the Times

---

[1] This is not the only lawsuit arising from Mr. Manz's 2024 trip to New York City and surrounding areas. *See, e.g.*, *Manz v. Walmart Supercenter Secaucus #3250*, No. 2:24 Civ. 9676, 2025 WL 2169974, at *7 (D.N.J. July 31, 2025) (dismissing Manz's claims for national origin discrimination because Walmart's public Wi-Fi network required a user to enter a U.S. phone number); *Faycal Manz v. The City of New York et al.*, Index No. 164438/2025 (New York County,

Square location of Los Tacos.  *Id.* ¶ 2.  Mr. Manz states that, as a German, he had never eaten tacos before, and he wished to try the acclaimed tacos offered at Defendant's establishment.  *Id.* ¶ 3. Mr. Manz went to the counter and purchased three tacos.  *Id.* ¶ 4.  Los Tacos has a self-service salsa bar, featuring various types of salsas with different ingredients and spice levels.  *Id.* ¶ 31.  At the bar, Mr. Manz proceeded to put hefty portions of salsa on top of all three tacos: two receiving a "red" salsa, and the third a "green" salsa.  *Id.* ¶¶ 4, 8-9.  The green salsa, which Mr. Manz admitted he never sampled, smelled, or asked an employee regarding the contents before consuming, *id.* ¶¶ 5-7, 11, is the source of this litigation.

Mr. Manz claims that after a single bite of the third taco, he immediately began suffering severe physical symptoms.  *Id.* ¶ 12.  He alleges that his tongue burned, his mouth hurt, his face turned red, and his heart rate soared.  *Id.*  He also alleges that he suffered severe GI distress and mouth sores that lasted for days.  *Id.* ¶ 18.  He tried to wash down the spice with a coke and later some ice cream, to no avail.  *Id.* ¶ 16.  He then returned to his hotel, where he took over-the-counter medicine for diarrhea, acid reflux, and stomach cramps that he brought with him on the trip.  *Id.* ¶ 17.

Mr. Manz called his wife to report the ordeal.  *Id.* ¶ 13.  He also immediately took many photos of the restaurant and his tongue, purporting to document his symptoms.  *Id.* ¶ 14.  However, he never told anyone else of the incident, including people at the restaurant.  *Id.* ¶ 15.  Nor did he seek medical attention, either in the United States, or upon returning home to Germany.  *Id.* ¶¶ 21-23.  Mr. Manz continued with his trip as planned, attended the U.S. Open, and ate meals as normal without issue for the remainder of the trip.  *Id.* ¶¶ 19-20.

---

Supreme Court) (ongoing suit alleging denial of civil rights stemming from NYPD's inability to return calls to foreign cell phone numbers).

According to Los Tacos, no one has ever complained about the spice level of their various salsa offerings until Mr. Manz. *Id.* ¶ 33. But he claims he is particularly vulnerable. Mr. Manz had a pre-existing sensitive gastrointestinal tract and "spice intolerance." *Id.* ¶ 24. In 2010, Mr. Manz even underwent a colonoscopy after experiencing diarrhea and was advised that he had had a reaction to excessively spicy food. *Id.* ¶ 25. He accordingly generally avoids spicy foods at home. *Id.* ¶ 26. But even though Mr. Manz knew that he should avoid "[t]oo spicy hot" foods, he nonetheless went to Los Tacos and placed multiple helpings of salsa on all of his tacos. *Id.* ¶ 27.

Mr. Manz filed this lawsuit, *pro se*, against Defendant on October 2, 2024. *See* Compl., ECF No 1. At the close of discovery, both Mr. Manz and Defendant moved for summary judgment on all claims. As Los Tacos notes, Mr. Manz relies solely on his subjective testimony for any evidence of injury and damages. *See* Memorandum of Law in Support of Motion for Summary Judgment at 6-7, ECF No. 71. Los Tacos also argues that Mr. Manz's claims fail as a matter of law for the failure to establish the elements of negligence under New York Law. To support his claims, Mr. Manz cites no evidence other than his own testimony, pictures of his tongue, and images from yelp showing that Los Tacos used to label salsa as "spicy" or "medium." Further, as Defendant highlights, the image attached to Mr. Manz's motion indicates that the "green" salsa that was excessively spicy is clearly marked as the "medium" spice salsa, while the "red" salsa that caused no issue at all is marked as "spicy." Exhibit 1 to Plaintiff's Declaration Supporting Plaintiff's Reply Brief in Opposition [sic] to Defendant's Motion for Summary Judgment at 7-8, ECF No. 81-1.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[2]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236.  But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

Where, as here, the plaintiff opposes summary judgment, the Court is "required to accept all sworn statements by [the plaintiff] as to matters on which []he [is] competent to testify, including what []he did, what []he observed, and what []he was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019). To overcome a motion for summary judgment, however, the plaintiff may not rely on "conclusory statements, conjecture, and inadmissible evidence," *Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011), but instead must offer some "hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998). The Court is required to "disregard all evidence favorable to the [defendants] that the jury is not required to believe. That is, the court should give credence to the evidence favoring the [plaintiff] as well as that evidence supporting the [defendants] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F.3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

"[I]n the rare circumstance where the plaintiff relies almost exclusively on [his] own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). At the same time, however, as the Second Circuit recently reiterated, a plaintiff's testimony, standing alone, may sometimes be independently sufficient to raise a genuine issue of material facts. *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025).

While credibility assessments are typically the province of the jury, "a party's affidavit may not create an issue of fact by 'contradict[ing] the affiant's previous deposition testimony.'" *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004) (emphasis in original) (quoting *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996), *supplemented*, 108 F. App'x 10 (2d Cir. 2004)). Nor can a party rely on their "testimony to raise a genuine issue of fact" if "that testimony is inescapably and unequivocally contradicted by [his] own sworn and written statements" and where he "offers no plausible explanation for the multitude of contradictions." *Bentley*, 935 F.3d at 88; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998). However, the threshold for a Court to disregard a plaintiff's testimony is quite high: the Court must find the record contradictions "inescapable and unequivocal" to find that her testimony raised only "a sham issue of fact." *In re Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

## DISCUSSION

Mr. Manz alleges several claims under New York state law stemming from the salsa incident.[3] These include (1) negligence, (2) gross negligence, (3) a claim under § 349 of the New York General Business Law ("GBL"), (4) and a motion for sanctions. As explained below, each of these claims fails as a matter of law.

### I.    Negligence and Gross Negligence

Mr. Manz has failed to state a claim that Los Tacos negligently served excessively spicy salsa at the Times Square location.

---

[3] The Court notes that Manz complaint just barely alleges a sufficient amount in controversy for diversity jurisdiction, requiring punitive damages to surpass the $75,000.00 threshold. *See* Pl.'s Mot. for Summary Judgment at 14, ECF No 74; *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 55 (2d Cir. 2018).

Under New York law, "a plaintiff must plead and prove that (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) the breach of that duty was the actual and proximate cause of the plaintiff's injuries." *Wurtzel v. Starbucks Coffee Co.,* 257 F.Supp.2d 520, 526 (E.D.N.Y.2003) (citing *Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 215 (2d Cir.2002)). Gross negligence cannot lie where there is no claim for ordinary negligence. *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. 2009). The plaintiff bears the burden of establishing a dispute of material fact on each element of a negligence claim. *See Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 276 (S.D.N.Y. 2024), *aff'd*, No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025).

Where a negligence case stems from allegations of a food product, a plaintiff must prove that the product served "exceeded the reasonable or customary standards for such a product." *See Huppe v. Twenty-First Century Restaurants of Am., Inc.*, 497 N.Y.S.2d 306, 308 (Sup. Ct. 1985), *aff'd*, 498 N.Y.S.2d 332 (1986) (finding that conclusory allegation that coffee was "super heated" and "too hot" was insufficient to show that "coffee was so hot that it exceeded the reasonable or customary standards for such a product."). Only then does a business have a duty to warn a consumer of the abnormal nature of the product. *Id.* A food provider is not liable for injuries resulting from "some allergy or other personal idiosyncrasy of the consumer, found only in an insignificant percentage of the population." *Kaempfe v. Lehn & Fink Prods. Corp.*, 21 A.D.2d 197, 201 (1st Dept. 1964), *aff'd*, 20 N.Y.2d 818 (1967).

While the Court is unaware of any direct application of this body of law to spicy foods generally, or to Mexican food or salsa specifically, the Court concludes that the logic of parallel cases applies here. As Los Tacos argues, Mexican food, and more specifically, salsa, is often spicy. *See* Declaration of Gregory Perel in Support of Opposition to Default Judgement ¶ 5, ECF No. 31-3. In fact, when it comes to salsa, the spice is often the point. Generally speaking, a food

7

purveyor cannot be liable for negligence under New York law for injuries resulting from an idiosyncratic characteristic of the consumer, so long as the purveyor's products fall within the norm for products of their nature.  *See id.*  For example, under New York law, "[t]here is certainly no duty to serve coffee so that 'no harm will come to a user no matter . . . what the circumstances of its use.'" *Wurtzel,* 257 F.Supp.2d at 527 (quoting *Huppe,* 497 N.Y.S.2d at 309).  Similarly, the Court concludes that, where there is evidence that the Los Tacos's salsa bar was *abnormally* spicy as compared to other salsas or Mexican food, there is no duty to warn a consumer of the spice-associated risks that come with consuming salsa.

Further, Mr. Manz's evidence is entirely lacking in this regard.  The only evidence he puts forward is his personal testimony regarding injuries suffered from consuming the salsa.  He provides no evidence of anyone else having suffered an injury from or complained about consuming Los Tacos's salsa.  Mr. Manz also provides no expert evidence to demonstrate, for example, that the spice levels at Los Tacos's salsa bar were higher than those of other similar restaurants, or to establish causation for his injuries.  *See Fane v. Zimmer*, 927 F.2d 124, 131 (2d Cir. 1991) (affirming the trial court's directed verdict for the defendant because, absent expert medical testimony on the issue of causation, the plaintiffs could not prove the elements of strict liability or negligence).  He also provides no evidence whatsoever as to what might be the reasonable standard of care for spicy food.  Even if he had established a standard of care, he admits that he never asked an employee about the spice of the salsa, and that he never sampled the salsa before placing a significant helping on each of his tacos.  The only evidence regarding the level of spice at Los Tacos in the record—unauthenticated online review photos indicating that the salsa bar used to indicate spice levels on the various salsas—demonstrates that the red salsa with which he had no issue was marked "SPICY," while the green salsa was marked "MEDIUM."  Exhibit 1 to Mr. Manz's Declaration Supporting Mr. Manz's Reply Brief in Opposition [sic] to Defendant's

Motion for Summary Judgment at 7-8, ECF No. 81-1.  Without any admissible testimony as to reasonable care or spice level, no jury could conclude that Los Tacos had a duty to warn Mr. Manz of the inherent spice present in their salsa.  Accordingly, Mr. Manz's claims for negligence and gross negligence fail as a matter of law.[4]

## II.    Section 349 of the GBL

Section 349 (a) of the General Business Law declares as unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," with no further elaboration of the prohibited conduct.  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995).  A prima facie case requires a showing that a defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.  *Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218, 219 (1993).  However, courts have limited these claims to corporate actions likely to mislead "a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 20.

"In the case of omissions in particular," the New York Court of Appeals has cautioned that § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Oswego*, 85 N.Y.2d at 26.  Accordingly, a plaintiff bringing an omission-based claim for § 349 liability must show that "the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information," *or* that plaintiffs could not "reasonably have obtained the relevant

---

[4] In order to recover punitive damages, a plaintiff must establish by clear, unequivocal and convincing evidence, "egregious and willful conduct" that is "morally culpable, or is actuated by evil and reprehensible motives." *Munoz v. Puretz,* 301 A.D.2d 382, 384, 753 N.Y.S.2d 463 (1st Dept. 2003).  Because Manz does not establish even bare negligence, he cannot recover any damages, let alone punitive damages.

information they now claim the [defendant] failed to provide." *Id.* "Reasonably accessible" information is any information that a plaintiff can obtain through "ordinary diligence." *See Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *27 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, No. 22 Civ. 962, 2023 WL 3829559 (2d Cir. June 6, 2023).

Mr. Manz has not established that he could not have obtained information about the spice level present in Los Tacos's salsa. Mr. Manz admits that he never asked anyone, whether a customer or a Los Tacos employee, about the contents of the salsa bar before putting a large amount on each of his tacos. A quick google search for "Mexican food," "salsa," or even Los Tacos reviews likely would have revealed that salsa can be quite spicy. For example, the online reviews that Mr. Manz seeks to admit to the record indicate that several users commented on the spice level at Los Tacos. Exhibit 2 to Mr. Manz's Declaration Supporting Mr. Manz's Reply Brief in Oppostion [sic] to Defendant's Motion for Summary Judgment ¶¶ 10-15, ECF No. 81-2 (one reviewer noting, "you get to choose how hot you want it;" another "I love the black salsa!! Not too spicy for me."). Mr. Manz also admits that he is particularly predisposed to spice-related ailments and admits that, as a result, he generally avoids spicy food at home. A reasonable person with Mr. Manz's characteristics could have easily discovered that the salsa at Los Tacos was spicy. Accordingly, Mr. Manz's claim under GBL § 349 fails. *See Paradowski.*, 2023 WL 3829559, at *3 ("[T]he factual record establishes that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals. Because Mr. Manz has failed to show that "the business alone possesses" this information, its § 349 claim fails.").

### III.    Sanctions

Finally, Mr. Manz also appears to be making a sanctions motion relating to representations by Los Tacos that they were unaware of service of the Complaint.  In opposition to Mr. Manz's Motion for Default Judgement, Los Tacos attached a declaration from Gregory Perel, an employee in the finance department, which explains that he received notice of the lawsuit via a FedEx envelope "which was delivered to [his] desk on October 16, 2024." ECF 31-3, ¶ 3.  Mr. Manz claims that this statement is false, as Mr. Manz's records indicate service was effectuated on October 15 and not via FedEx.  *See* Letter Providing Evidence of The False Declaration of Gregory Perel at 2, ECF No. 36.  Mr. Manz also argues that this statement contradicts Defendant's filing seeking vacatur of Default Judgment, where Los Tacos indicates it was not aware of the lawsuit until November.  *Id.*

Mr. Manz has failed to comply with any of the procedural requirements for sanctions.  *See Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010); *see also Banfield v. UHS Home Attendants, Inc.*, 96 Civ. 4850, 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997) (dismissing a sanctions motion filed within papers on motion to dismiss as procedurally improper). Nonetheless, the Court finds no sanctionable conduct on the part of Los Tacos.  There is nothing inconsistent between the statements identified.  As explained in earlier proceedings, Mr. Manz improperly served an employee at a Los Tacos location, but the complaint was handed off to Mr. Perel in the finance department the following day.  Memorandum of Law in Opposition to Default Judgment at 16-17, ECF No. 32.  Mr. Perel assumed that proper service would be forthcoming, as legally, service could only occur through the New York Secretary of State or through service on an officer of the corporation.  *Id.*; *see also* N.Y. C.P.L.R. § 311(a)(1) and N.Y. Bus. Corp. Law § 306(b)(1).  Mr. Perel notified Los Tacos's insurance carrier, who eventually referred the matter to counsel once service was in fact effectuated a month later.  Memorandum of Law in Opposition to

11

Default Judgment at 16-17.  Mr. Manz's claim of a misstatement appears to be based on a misunderstanding of how his mistake in improperly effectuating service caused Los Tacos not to respond to his complaint before this Court.  Accordingly, the motion for sanctions is DENIED.[5]

## CONCLUSION

Based on the undisputed facts, the Court concludes that Defendant Los Tacos is entitled to judgment as a matter of law on all claims.  Accordingly, Los Tacos's Motion for Summary Judgment is hereby **GRANTED**, while Mr. Mr. Manz's Motion is **DENIED**.

The Clerk of Court is respectfully directed to (1) terminate ECF Nos. 71, 72, and 74; (2) enter judgment in favor of Los Tacos; and (3) close the case.

SO ORDERED.

Dated: February 15, 2026

New York, New York

_____
DALE E. HO
United States District Judge

---

[5] The Court notes that, while Rule 11 sanctions may be appropriate as to Mr. Manz given the apparently frivolous nature of this Complaint, it does not consider such sanctions at this time.